# Exhibit A

 **CT Corporation**

**Service of Process
Transmittal**
06/21/2019
CT Log Number 535728821

TO: CA LegaLit
Bank of America
225 W Hillcrest Drive
Thousand Oaks, CA 91360

RE: **Process Served in Florida**

FOR: Bank of America Corporation (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | KARINA SANTANA-BENCHETTAB, etc., Pltf. vs. Bank of America Corporation, etc., Dft. |
| **DOCUMENT(S) SERVED:** | Summons, Attachment(s), First Request(s), First Set of Interrogatories, Complaint, Exhibit(s) |
| **COURT/AGENCY:** | Hillsborough County Circuit Court, FL<br>Case # 19CA005895 |
| **NATURE OF ACTION:** | Intentional Infliction Of Emotional Distress And Defamation Against Defendant |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Plantation, FL |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 06/21/2019 at 16:39 |
| **JURISDICTION SERVED :** | Florida |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service, exclusive of the day of service (Document(s) may contain additional answer dates) |
| **ATTORNEY(S) / SENDER(S):** | Daniel DeCiccio<br>DeCICCIO & JOHNSON<br>541 S. Orlando Ave., Ste. 308<br>Maitlan, FL 32751<br>407-740-4111 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 06/22/2019, Expected Purge Date: 06/27/2019<br><br>Image SOP<br><br>Email Notification, CA LegaLit calegalit@bankofamerica.com |
| **SIGNED:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>1200 South Pine Island Road<br>Plantation, FL 33324<br>954-473-5503 |

Page 1 of 1 / SH

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Date _____     Time _____

Initials _____     ID # _____

IN THE CIRCUIT COURT FOR THE
THIRTEENTH JUDICIAL CIRCUIT IN
AND FOR HILLSBOROUGH COUNTY,
FLORIDA

CASE NO.: **19-CA-005895**

KARINA SANTANA-BENCHETTAB,
Individual,

JUDGE:   **REX BARBAS**

Plaintiff,

**DIVISION: J**

v.

BANK OF AMERICA CORPORATION,
A foreign corporation,

Defendant.

_____/

**SUMMONS**

Date: _6-21-19_ Time: __2:30 ᵖᵐ__

**Eric Deal          S.P.S. 336**

THE STATE OF FLORIDA:
To Each Sheriff of the State:

YOU ARE HEREBY COMMANDED to serve this Summons and a copy of the Complaint
or Petition and Interrogatories, Request to Produce and Request for Admissions in this action on
Defendant.

**BANK OF AMERICA CORPORATION**
**c/o C T CORPORATION SYSTEM., Registered Agent**
**1200 South Pine Island Road**
**Plantation, FL 33324**

Defendant is hereby required to serve written defenses to the Complaint or Petition on **Daniel**
**DeCiccio, Esquire, Florida Bar No.: 338941, the Plaintiffs' attorney, who address 541 S.**
**Orlando Ave., Suite 308, Maitland, FL 32751 (407) 740-4111 within twenty (20) days** after service
of this Summons on that Defendant, exclusive of the day of service, and to file the original of the
defenses with the Clerk of this Court either before service on Plaintiff's attorney or immediately
thereafter. If a Defendant fails to do so, a default will be entered against that Defendant for the relief
demanded in the Complaint or Petition.

The party to whom the interrogatories are directed shall serve the answers and any objections within 45 days after service of process and initial pleading upon the Defendant. The answers to the interrogatories shall be served on DeCiccio & Johnson 541 S. Orlando Ave., Suite 308, Maitland, FL, 32751 and copies shall be served on all other parties by the answering party.

The party to whom the Request to Produce is directed shall serve the responses and any objections within 45 days after service of process and initial pleading upon the Defendant. The answers to Request to Produce shall be served on DeCiccio & Johnson, 541 S. Orlando Ave., Suite 308, Maitland, FL, 32751 and copies shall be served on all other parties by the answering party.

The party to whom the Request for Admissions is directed shall serve the responses and any objections within 45 days after service of process and initial pleading upon the Defendant. The answers to Request for Admissions shall be served on DeCiccio & Johnson, 541 S. Orlando Ave., Suite 308, Maitland, FL, 32751 and copies shall be served on all other parties by the answering party.

IF YOU ARE A PERSON WITH A DISABILITY WHO NEEDS ACCOMMODATION IN ORDER TO PARTICIPATE IN THIS PROCEEDING, YOU ARE ENTITLED, AT NO COST TO YOU, TO THE PROVISION OF CERTAIN ASSISTANCE. PLEASE CONTACT COURT ADMINISTRATION, 800 TWIGGS STREET, TAMPA, FLORIDA 33602 TELEPHONE (813) 276-8100 WITHIN TWO (2) WORKING DAYS OF YOUR RECEIPT OF THIS DOCUMENT; IF YOU ARE HEARING OR VOICE IMPAIRED, CALL (800) 955-8771.

Dated on _____ June 10, 2019 _____.

CLERK OF THE CIRCUIT COURT

By: _Lori A. Guidoboni_

As Deputy Clerk

2

IMPORTANT: SPANISH AND FRENCH VERSIONS ON REVERSE

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene cuarenta (40) días contados, a partir del recibo de esta notificación, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal; y contestar el interrogatorio adjunto. Una llamada telefónica no lo protegerá; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el número del caso y los nombres de las partes interesadas en dicho caso. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podría ser desojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, puede usted consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guía telefónica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante el tribunal, deberá usted enviar por correo, o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney." (Demandante o Abogado del Demandante):

**Daniel DeCiccio, Esquire**
**DeCiccio & Johnson**
**541 S. Orlando Ave., Suite 308**
**Maitland, FL 32751**

## IMPORTANTE

Des poursuites judiciaires ont été entreprises contre vous. Vous aves quarante (4) jours consécutifs à partir de la date de l'assignation de cette citation pour déposer une réponse écrité à la plainte ci-jointe auprès de ce Tribunal. Un simple coup de téléphone est insuffisant pour vous protéger; vous êtes obligé de deposer votre réponse écrité, avec mention du numéro de dossier ci-dessus et du nom des parties nommées içi, si vous souhaitez que le Tribunal entende votre cause. Si vous ne déposez pas votre réponse écrité dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent être saisis par la suite, sans aucun préavis ultérieur du Tribunal. Il y a d'autres obligations juridiques et vous pouvez réquerir les services immédiats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez téléphoner à un service de référence d'avocats ou à un bureau d'assistance juridique (figurant à l'annuaire de téléphones).

Si vous choisissez de déposer vous-même une réponse écrité, il vous faudra également, en même temps que cette formalité, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse écrité au "Plaintiff/Plaintiff's Attorney" (Plaingnant ou à son avocat) nommé ci-dessous:

**Daniel DeCiccio, Esquire**
**DeCiccio & Johnson**
**541 S. Orlando Ave., Suite 308**
**Maitland, FL 32751**

3

IN THE CIRCUIT COURT FOR THE
THIRTEENTH JUDICIAL CIRCUIT IN
AND FOR HILLSBOROUGH COUNTY,
FLORIDA

CASE NO.:  **19-CA-005895**

KARINA SANTANA-BENCHETTAB,
Individual,

JUDGE: **REX BARBAS**

      Plaintiff,

**DIVISION: J**

v.

BANK OF AMERICA CORPORATION,
A foreign corporation,

      Defendant.

_____/

## COMPLAINT

Plaintiff, Karina Santana-Benchettab, (hereinafter "Plaintiff" or "Santana") sues Defendant, Bank of America Corporation, (hereinafter "BOA") and states,

### General Allegations

1.    At all times material hereto, Santana, is an individual, residing in Tampa, Hillsborough County, Florida.

2.    At all times material hereto, BOA is a foreign corporation registered to business and doing business in the State of Florida.

3.    This is an action in excess of $15,000 exclusive of attorneys' fees and costs.

4.    Santana, from on/about August 8, 2016 to September 9, 2017 was an employee, Senior Fraud Analyst II, with BOA located at 101 E. Kennedy Blvd., Tampa, Florida 33615.

5.  As part of her benefits as an employee of BOA, Santana had a long-term disability (LTD) policy and benefits with MetLife (Claim No. XXXXXXX60588; ID No. XXXX9397).

6.  Santana on December 21, 2016 suffered a workers' compensation injury and accident at BOA in Tampa, Florida, and on April 6, 2017 filed a petition for benefits wherein she alleged an on-the-job injury by accident on December 21, 2016 arising out of her employment due to exposure to dust, fumes and particulates from a construction renovation at BOA in Tampa, Florida where she worked.

7.  Santana, due to health problems, worked intermittently for BOA from February 6 to February 8, 2017; February 11 to February 18, 2017; and, August 8 to September 8, 2017.

8.  Santana's last date of physical employment with BOA in Tampa, Florida was on September 9, 2017, and she has not worked since.

9.  BOA in the workers' compensation proceeding (OJCC Case No.: 17-008115EDS), denied the December 21, 2016 accident and the injury, and the case went into litigation hereinafter referred to as the "workers' compensation matter."

10.  BOA's workers' compensation counsel, Pamela A. Walton, on April 21, 2017 filed her notice of appearance on behalf of BOA in the workers' compensation matter.

11.  Discovery transpired in the workers' compensation matter, medical experts were retained by Santana and BOA, and said experts offered testimony submitted to the Judge of Compensation Claims.

12.  The workers' compensation matter proceeded to a final evidentiary hearing on November 20, 2017 resulting in a December 14, 2017 final Compensation Order in favor of BOA.

13.  Santana, through counsel, on January 12, 2018 filed a timely notice of appeal to the Compensation Order.

14. During the pendency of the appeal (Case no. 1D18-0244) to the District Court of Appeal, First District, BOA through their counsel Pamela A. Walton, reached a settlement of the workers' compensation matter, and Santana through her counsel withdrew the appeal.

15. BOA and Santana through counsel negotiated settlement language, exchanged settlement papers, finalized those papers, and ultimately settled the workers' compensation matter culminating in a $12,500 gross settlement as reflected in the June 4, 2018 "Order Under Section 440.20(11)(c),(d) & (e), Florida Statutes (2001)" by Judge of Compensation Claims E. Douglas Spangler (hereinafter "Settlement Order").

16. The Settlement Order was never challenged, modified or appealed. The Settlement Order is attached as Exhibit "A".

17. BOA and its counsel, Pamela A. Walton, knew or should have known when Santana last worked for BOA; and, as part of the workers' compensation settlement documents Santana had to separate her employment with BOA. The settlement documents signed on 5/1/18 in the workers' compensation matter between BOA and Santana, attached as Composite Exhibit "B" consist of "General Release And Waiver For Settlements Pursuant to 440.20(11)(c), (d), & (e), 2001 Florida Statutes," and "General Release."

18. During and after the workers' compensation proceeding, Santana applied for and received Supplemental Security Income (SSI) and Social Security Disability Insurance (SSDI) benefits from the Social Security Administration (SSA).

19. Ms. Santana received a Fully Favorable decision dated December 13, 2017 finding her totally disabled and entitled to SSI and/or SSDI benefits. Attached as Exhibit "C" is the fully favorable decision.

20.     After settlement of the workers' compensation proceeding, Santana applied for and by letter of March 6, 2018 from MetLife (attached as "D" and "E") was approved on October 11, 2018, for and later received LTD benefits from MetLife in the amount of $667 per month.

## COUNT I - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

21.     The allegations in paragraphs one (1) through twenty (20) above are realleged as if fully set forth herein.

22.     On/about June 8, 2018 Santana learned that the IRS/SSA was requesting an over payment of $21,544.13 because BOA falsely reported to the SSA Santana was actively working for the BOA. Attached as Exhibit "F" is the June 8, 2018 letter from the SSA.

23.     On/about July 3, 2018, Santana received the attached (Exhibit "G") July 3, 2018 letter reducing her SSDI benefits from $750.00 to $0.00 beginning August 2018.  The reduction in SSDI was because the BOA falsely reported to the IRS/SSA Santana was actively working for the BOA.

24.     There has been a long and continuous train of intentional, malicious and abusive false reporting by BOA to the IRS/SSA since on/about June 8, 2018 to the present.

25.     Attached as Exhibit "H" is a January 18, 2019 letter from Marica D. Thornton from BOA that Santana has not reported to work since December 26, 2018 and she abandoned her job.

26.     Pursuant to BOA's letter October 11, 2018 letter, attached as Exhibit "I", BOA gave false information to the SSA, the IRS and MetLife that she is employed full-time for BOA.

27.     Pursuant to BOA's December 5, 2018 letter, attached as Exhibit "J", BOA gave false information to the SSA, the IRS and MetLife Santana is employed full-time for BOA.

4

28.     On/about January 18, 2019, and March 21, 2019, Attorney Pamela A. Walton, was

notified that BOA was falsely reporting to the SSA and others that Santana worked for BOA after

September 9, 2017 and/or Santana was still employed with the BOA.

29.     The BOA responded with the attached (Exhibit "K") January 23, 2019 To Whom

It May Concern letter from BOA stating the Santana has not been employed by the bank in any

manner since of May 1, 2018. (Santana did not work anywhere for anyone in 2018).

30.     After January 23, 2019, the BOA continued to give false reports of Santana's

employment and earnings with BOA to SSA, IRS and MetLife that Santana worked for BOA after

September 9, 2017 which is false and inaccurate.

31.     Attached as Exhibit "L" is the April 22, 2019 letter to Pamela A. Walton stating the

BOA continues to report to SSA that Santana is working.

32.     Per the May 17, 2019 letter to Pamela A. Walton, attached as Exhibit "M", Santana

and her social security counsel Wayne Johnson met with the SSA on May 14, 2019. BOA falsely

reported to IRS and/or SSA the following income for Santana from working:

- $4,164 for the 3rd quarter of 2017
- $8,801 for the 4th quarter of 2017
- $5,781 for the 1st quarter of 2018
- $183 for the 2nd quarter of 2018
- $1,000 for the 4th quarter of 2018

33.     Santana contacted BOA to clarify BOA's false reporting of wages. Attached as

Exhibit "N" is the 5/30/19 letter from BOA falsely stating Santana was employed at BOA "from

8/8/2016 to 1/22/2019" as a "Client Svcs Rep II". Santana last worked for BOA on September 9,

2017, formally separated on May 1, 2018 and her title with BOA was Senior Fraud Analyst II.

Exhibit "N" also states, incorrectly, that Santana "has not received any other pay since 3/10/2018

5

rather than $1,000.00 one-time bonus amount on a paycheck dated 12/5/2018". Santana did not receive "pay" (wages) for time worked after September 9, 2017 as Santana did not work for BOA after September 9, 2017.

34.     The SSA has terminated Santana's SSDI benefits because BOA has intentionally and falsely reported to the SSA and the Internal Revenue Service (IRS) Santana is working and receiving income from the BOA. These false allegations are tantamount to calling Santana a social security fraud, serious violations of federal law with criminal and monetary penalties.

35.     BOA 's conduct was intentional and reckless in falsely reporting to MetLife that Santana is working and receiving wage after September 9, 2017, and as a result, MetLife has terminated Santana's LTD effective July 1, 2018—BOA's false reporting to MetLife is tantamount to accusing Santana of insurance fraud, a felony in Florida.

36.     Because MetLife has terminated Ms. Santana's LTD based on the false information from BOA, they have also stopped paying her health insurance premiums. This has caused Ms. Santana to go without health insurance and have her doctors withdraw from her care. BOA's fraudulent reporting that Ms. Santana is working and earning wages has therefore interfered with her doctor-patient relationships.

37.     BOA knows that Santana qualified for SSI, SSDI and LTD benefits and is sickly and frail, and BOA purposely targeted Santana because she is ill and weak.

38.     BOA's false reporting to SSA, IRS and MetLife is outrageous conduct as to go beyond the bounds of all decency, is odious and utterly intolerable in a civilized community.

39.     BOA knows whether Santana works for BOA and knows false reporting of earned income (wages) to the IRS, MetLife and SSA carries substantial monetary and non-monetary penalties and potential loss of liberty to Santana for federal and state crimes.

6

40. BOA's false reporting of income (wages) and employment is foreseeable that it would harm Santana and result is the termination of benefits from SSA and MetLife and create criminal liability for social security fraud and insurance fraud.

41. The continuous false reporting by BOA to IRS, SSA and MetLife has suspended Santana's income, interfered with her quality of life and ability to provide essentials for her health, safety and welfare, and caused Santana severe emotional distress.

42. The emotional distress caused by BOA to Santana is severe not only in terminating disability benefits on which to live, survive and pay bills in a disabled condition, but also, in causing the fear of incarceration for alleged social security fraud and insurance fraud and the cost to defend those criminal actions without the means to pay for such defense; and, no reasonable person could endure the pressure and fear caused by BOA in providing such false information to the IRS, MetLife and the SSN and the resulting ramifications of such outrageous conduct including financial destruction and the loss of liberty.

43. As a direct and proximate result of BOA's outrageous conduct, Santana suffered severe emotional distress, legal fees to correct BOA's false reporting of income, wages and employment, damage to her credit, mental anguish, loss of tax benefits, financial distress and she was forced to apply for government assistance and loss of income and benefits.

Wherefore, Santana demands judgment for damages against BOA. A trial by jury is requested.

## COUNT II – DEFAMATION

44. The allegations in paragraphs one (1) through forty-three (43) above are realleged as is fully set forth herein.

7

45.     The BOA published to the SSA, IRS and MetLife and perhaps to other third parties orally (to be obtained through discovery), and in writing, false reports that Santana worked and earned income (wages) after September 9, 2017 for BOA and/or Santana was still employed with BOA after September 9, 2017.

46.     On September 4, 2018, Santana met with Ms. Leuhan at the Tampa SSA office. Ms. Leuhan orally advised Santana she received communications published from BOA that Santana was actively employed full-time with BOA and earning wages. Ms. Leuhan showed Santana on her computer monitor a letter from BOA with BOA's letterhead stating Santana was actively employed full time with BOA and earning wages

47.     On February 25, 2019, Santana travelled to the Tampa SSA office, and she met with a Mr. Walker with the Social Security Administration. Mr. Walker orally advised Santana he received communications published from BOA that Santana was actively employed full-time with BOA, and Santana was earning income, full-time wages, from BOA.

48.     On May 14, 2019, Santana went again to the Tampa SSA office and she was advised orally by a Ms. Smyth that BOA had published to the IRS that Santana was earning income and this had been flagged since Santana was receiving SSDI and/or SSI and had not informed SSA she was earning income (wages) from BOA.

49.     On June 3, 2019, Santana travelled, for the fourth time, to the Tampa SSA office and she met with a Ms. Rivas and a supervisor, Mr. Milan, with the SSA. Ms. Rivas and Mr. Milan orally advised Santana that SSA needs a letter from BOA with BOA's letterhead stating Santana is not actively employed with BOA and is not receiving any wages from BOA.

8

50.     BOA's written false publications include Exhibits "I", "J", and "K" and discovery will reveal additional written and oral false publications to third parties including but not limited to the SSA, IRS or MetLife.

51.     BOA's oral and written intentional and malicious publications to third parties including to SSA, IRS and MetLife stating that Santana earned income (wages) and worked for the BOA after September 9, 2017 were false.

52.     BOA and their Counsel, Pamela A. Walton, knew publications from BOA stating Santana worked for BOA after September 9, 2017 or was working for BOA after September 9, 2017, were false; or, BOA acted with, at minimum, negligence, or with reckless disregard in publishing false information to the SSA, IRS and MetLife (and perhaps others to be learned in discovery) that Santana worked and earned income (wages) for BOA after September 9, 2017 or was working for BOA after September 9, 2017. Santana did not work for the BOA after September 9, 2017 or work for any other employer after September 9, 2017.

53.     BOA not only knew Santana did not work for BOA after September 9, 2017, BOA required Santana to separate her employment with BOA in the workers' compensation settlement documents signed on May 1, 2018, Exhibit "B".

54.     BOA intentionally and maliciously published to the SSA, IRS and MetLife (and perhaps other third parties which discovery will reveal) patently false earnings information about Santana stating she had worked for BOA after September 9, 2017 and was working for BOA after September 9, 2017 and earning wages.

55.     The false statements by BOA of Santana working and earning income (wages) after September 9, 2017 were tantamount to (1) calling Santana a Social Security fraud and felon for obtaining SSDI while working and receiving disability payments at the same time in violation of

9

federal law, and (2) calling Santana an insurance fraud and felon with MetLife for obtaining LTD benefits while working and earning money.

56. The false statements by BOA published to third parties of Santana working after September 9, 2017, earning income after September 9, 2017 and not reporting income earned after September 9, 2017 to the SSA, and constitute defamation per se, those false statements accuse Santana of state and federal felonies crimes and expose Santana to distrust, hatred, contempt, ridicule or obloquy.

57. Never once did BOA apologize to Santana for falsely reporting her earnings (wages) after September 9, 2017 to the SSA, IRS, MetLife and potential other third parties to be learned in discovery.

58. As a direct and proximate result of BOA's intentional, false and malicious publications to third parties that Santana worked after September 9, 2017 for BOA or was working after September 9, 2017 for BOA, and earned wages, Santana suffered actual and compensatory damages including termination of Social Security Income (SSI) and LTD benefits, damage to her credit, as well as,

a. Pecuniary loss,

b. Mental suffering, and

c. Injury to her reputation.

Wherefore, Santana demands judgment for damages against BOA. A trial by jury is requested.

Dated this _6th_ day of June 2019.

10

By: _____

Daniel DeCiccio, ESQUIRE
Florida Bar No.: 0338941
Wayne Johnson, ESQUIRE
Florida Bar No.: 0966177
DeCICCIO & JOHNSON
541 S. Orlando Ave., Ste. 308
Maitland FL 32751
Telephone: (407) 740-4111
Facsimile: (407) 740-4011
Attorneys for Plaintiff
Primary e-mail: dan.deciccio@deciccio.com
Secondary e-mail: wendy.orillano@deciccio.com

11

**STATE OF FLORIDA**
**DIVISION OF ADMINISTRATIVE HEARINGS**
**OFFICE OF THE JUDGE OF COMPENSATION CLAIMS**
**TAMPA DISTRICT OFFICE**

EMPLOYEE:
KARINA SANTANA-BENCHETTAB
8830 BEACON LAKES DRIVE, #208
TAMPA, FL 33615

ATTORNEY FOR EMPLOYEE:
DANIEL DECICCIO, ESQUIRE
541 SOUTH ORLANDO AVENUE, SUITE 308
MAITLAND, FL 32751

EMPLOYER:
BANK OF AMERICA WC CLAIMS
BANK OF AMERICA
NC1-028-16-01
ONE BANK OF AMERICA CENTER
150 N. COLLEGE STREET
CHARLOTTE, NC 28255

ATTORNEY FOR EMPLOYER/SERVICING AGENT:
PAMELA A. WALTON, ESQUIRE
INGRAM & BUNECKY
7365 MERCHANT COURT, SUITE 8
SARASOTA, FL 34240
PWALTON@INGRAMLAW.COM

SERVICING AGENT:
CORVEL ENTERPRISE COMP/TAMPA
PO BOX 23127
TAMPA, FL 33623-3127

OJCC NUMBER:    17-008115EDS
JUDGE: E. DOUGLAS SPANGLER
D/A:   12/21/2016

---

**ORDER UNDER SECTION 440.20(11)(c), (d) & (e), FLORIDA STATUTES (2001)**

---

Pursuant to section 440.20(11)(c), (d) & (e), Florida Statutes the Parties have reached a settlement agreement. After reviewing the documentation, the undersigned judge finds that:

1.  The amount of attorney's fee as evidenced in the attached Attorney Fee Data Sheet and supporting documentation meets the requirements of the Workers' Compensation Law.
2.  The Claimant has an outstanding child support arrearage of $0.00.
3.  The total amount of the settlement is $12,500.00. The Claimant agrees to pay and counsel agrees to accept the sum of $5,000.00, which is not within the statutory percentages set forth in section 440.34, Florida Statutes. The Claimant's net settlement after payment of fees of $5,000.00, costs of $250.00, and child support arrearage of $0.00 is $7,250.00.
4.  The attorney's fee shall not be subject to modification.

It is ORDERED and ADJUDGED that the attorney's fee and child support arrearage allocation paid under the settlement agreement is approved.

DONE and ORDERED in chambers in Tampa, Hillsborough County, Florida. *June 4th, 2018.*

_____
Judge of Compensation Claims

This is to certify that the above Order was entered by the Judge of Compensation Claims and a copy was served by e-Service to counsel for the Claimant and counsel for the Employer/Carrier listed above on *June 4th*, 2018.

_____
Secretary to Judge of Compensation Claims

**Exhibit A**

EMPLOYEE:
KARINA SANTANA-BENCHETTAB
8830 BEACON LAKES DRIVE, #208
TAMPA, FL 33615

ATTORNEY FOR EMPLOYEE:
DANIEL DECICCIO, ESQUIRE
541 SOUTH ORLANDO AVENUE, SUITE 308
MAITLAND, FL 32751

EMPLOYER:
BANK OF AMERICA WC CLAIMS
BANK OF AMERICA
NC1-028-16-01
ONE BANK OF AMERICA CENTER
150 N. COLLEGE STREET
CHARLOTTE, NC 28255

ATTORNEY FOR EMPLOYER/SERVICING AGENT:
PAMELA A. WALTON, ESQUIRE
INGRAM & BUNECKY
7365 MERCHANT COURT, SUITE 8
SARASOTA, FL 34240
PWALTON@INGRAMLAW.COM

SERVICING AGENT:
CORVEL ENTERPRISE COMP/TAMPA
PO BOX 23127
TAMPA, FL 33623-3127

OJCC NUMBER:     17-008115BDS
JUDGE: E. DOUGLAS SPANGLER
D/A:     12/21/2016

---

**GENERAL RELEASE AND WAIVER FOR SETTLEMENTS**
**PURSUANT TO 440.20(11)(c), (d) & (e), 2001 FLORIDA STATUTES**

---

This document, subject to the terms and conditions as set forth below, is intended to be a complete entire, and final release and waiver of any and all past, present, and future benefits that Claimant is, or may be, entitled to under **Chapter 440, Florida Statutes**, and any other claims, causes of action, or rights that the Claimant may have against the Employer/Servicing Agent, Employer/client Employer and Carrier/Servicing Agent. The parties, therefore, stipulate as follows:

1.   **DESCRIPTION OF ACCIDENT:** The Employee, Karina Santana-Benchettab, (hereinafter referenced as "Claimant" or "Employee"), alleges that she sustained injuries by accident as contemplated under F.S. 440.02(1), arising out of and in the course of employment with the employer on December 21, 2016. The parties stipulate and agree that all accidents, injuries, and occupational diseases to have allegedly occurred or

**Exhibit B**

which have been sustained by the employee while employed by the employer have been revealed and settled herein.

2.    **JURISDICTION:** The Judge of Compensation Claims appointed under FS 440.45 has jurisdiction of the subject matter and the parties hereto. The Claimant stipulates and the parties agree that this settlement shall constitute an election of remedies by the Claimant, with respect to Employer/Client Employer and Carrier/Servicing Agent herein.

3.    **MAXIMUM MEDICAL IMPROVEMENT:** The parties stipulate that it is unnecessary to reach MMI. The Claimant stipulates that she shall be bound by this settlement agreement even though the conditions or injuries may become greater, more disabling, more numerous or more extensive than is now known or anticipated.

4.    **ELECTION OF REMEDY AND RELEASE OF LIABILITY:** By entering into this settlement agreement, the parties stipulate that the Claimant has elected workers' compensation, and not tort liability as the exclusive remedy. The parties further stipulate that as additional consideration for the payment of the settlement agreement by the Employer/Servicing Agent, the Claimant releases, indemnifies, discharges, waives and settles any third party employer liability (Coverage B) cause of action against Employer/Client Employer and Carrier/Servicing Agent.

5.    **SETTLEMENT AMOUNT AND DISCHARGE FROM LIABILITY:** It is hereby agreed the Employer/Servicing Agent will pay to the Claimant $12,500.00 for full satisfaction of the obligation or liability to pay any and all benefits of whatever kind and classification available under the Florida Workers' Compensation Law including, but not limited to, future medical benefits, monetary compensation as contemplated under Section 440.15 Florida Statutes, impairment benefits, death benefits, attorney's fees, past medical benefits and rehabilitation benefits under Section 440.49, Florida Statutes, on account of the accident or occupational disease referenced herein which shall be allocated as follows:

|  |  |  |  |
|---|---|---|---|
| (a) Past *medical* | benefits | $3,750.00 | *ASD* |
| (b) | future medical expenses | $3,750.00 | |
| (c) Attorney's Fee and costs | | $5,000.00 | |

TOTAL          $12,500.00

The payment of the lump-sum set forth herein will definitely aid in the rehabilitation of the injured employee or will otherwise be in the Claimant's best interest. Upon receipt of the lump-sum, the Employer/Servicing Agent will be forever released and discharged from the obligation or liability to pay any and all benefits of whatever kind or classification payable under the Florida Workers' Compensation Law.

6.     **ATTORNEY'S FEES:** The Claimant has been represented by Daniel DeCiccio, Esquire in connection with this matter, who is entitled to a fee for legal services rendered. Accordingly, $5,000.00 is a reasonable fee for such services and is not within the guidelines for determination of a reasonable fee as set forth in F.S. 440.34(1). In addition thereto, the Claimant shall also reimburse her attorney for all costs. Not withstanding the provisions of F.S. 440.34(3)(a-d), the Claimant and not the Employer/Servicing Agent is responsible for payment of his own attorney's fees because this settlement was made under F.S. 440.20(11)(c). The Claimant has been informed of a right to a hearing on the amount of the fee charged by the attorney and hereby waives her rights to such a hearing. The fee shall be paid from the settlement proceeds thereby making the net settlement amount $7,500.00 less costs of $250.00, and child support arrearage of $0.00. It is stipulated that if the Claimant was previously represented and/or a lien has been filed for attorney fees in this matter, it is the responsibility of the Claimant and her attorney to satisfy this lien. The Claimant and her attorney further stipulate to hold the Employer/Servicing Agent harmless from the payment of any attorney fee lien that may be outstanding as well as pay all costs and attorney fees for defending such action.

7.     **WAIVER OF RIGHT TO HAVE CASE HEARD BY JUDGE OF COMPENSATION CLAIMS AND WAIVER OF RIGHT TO SET ASIDE SETTLEMENT:** The Claimant understands that she does hereby relinquish the right to have any unresolved conflicts or disputes involving the right to monetary compensation benefits, impairment benefits, death benefits, attorney's fees, past due medical benefits, future medical benefits, and rehabilitation benefits heard and decided by a Judge. Further, this agreement shall not be subject to modification under F.S. 440.28 or subject to petition to modify or set aside in any Circuit or County Court

proceeding. The parties further agree that all claims in relation to this matter against the Employer/Servicing Agent are hereby dismissed with prejudice.

8.  **PRESENT WORTH AND POSSIBLE OFFSET FOR SOCIAL SECURITY DISABILITY BENEFITS CONSIDERED:** In reaching this agreement, the parties have considered the present value of all future payments and indemnity benefits, impairment benefits, medical benefits, and death benefits potentially payable to the claimant under Florida Workers' Compensation Law on account of the accident referenced herein. The injured Employee is 45 years old, having been born on June 15, 1972, with a life expectancy of approximately 36.2 years or 1,882.4 weeks. Accordingly, when the lump sum payment of indemnity of $3,750.00 herein is prorated on a weekly basis over the Employee's life expectancy, the lump sum of indemnity is equal to payment of future benefits at a rate of $1.99 per week. This periodic repayment schedule results in a substantial loss to the Employee on a consistent basis. Taking that into consideration, the parties hereby agree that those weekly payments are the same as if the lump-sum of indemnity of $3,750.00 would have been paid to the Claimant at a rate of $1.99 per week over the expected lifetime. The same is true for lump sum payment of future medical benefit of $3,750.00. The lump sum consideration given for the settlement of future medical benefits is the same as if the lump sum would have been paid to the Claimant at a rate of $1.99 per week over the expected lifetime. The Employer/Carrier/Servicing Agent's right to offset workers' compensation immunity and medical benefits due under Florida Workers' Compensation Law against benefits payable on account of total disability under Chapter 42, United States Code including benefits payable under Medicare is also included in these calculations and has been considered by the parties in reaching this agreement.

9.  **MEDICARE RIGHTS CONSIDERED:** It is not the purpose of this settlement agreement to shift to Medicare the responsibility for payment of medical expenses for the treatment of work related conditions. Instead, this settlement agreement is intended to provide the Claimant with a lump sum which will foreclose the Employer/Carrier/Servicing Agent's responsibility for future payments of all medical expenses related to the work accident. Of this, the amount under paragraph 5, or $3,750.00 is intended for future medical expenses related to the work injury that would be otherwise covered under Medicare. Further, in reaching this

agreement, the parties have considered that many common medical expenses are not paid or reimbursable under certain group health policies or the Federal Medicare Program. These medical expenses are being taken into consideration in the settlement of future medical benefits. These expenses include travel expenses, prescription medication, routine follow-up visits, attendant care, supportive devices, medical comfort services, Medicare hospital deductible and Medicare Part B co-payments, emergency room treatment and hospitalization not covered by Medicare but necessary in the ongoing treatment of the workers' compensation injuries.

The purpose of this settlement is not to shift to Medicare any responsibility for payment of medical expenses for the treatment of the claimant's work-related conditions due to the accident and compensable injuries referenced herein, but to provide the claimant with a lump sum which will foreclose the Employer/Carrier/Servicing Agent's responsibilities for past and future payment of all work-related medical expenses. In accepting this settlement, the Claimant understands and agrees that Medicare will not pay for any medical expenses related to the compensable injuries she sustained as a result of the accident referenced herein.

The Centers for Medicare and Medicaid Services have stated in a memorandum circulated to its regional offices that only those workers' compensation settlements wherein the claimant is already a Medicare/Medicaid beneficiary and the settlement amount is $25,000.00 or greater, or has a "reasonable expectation" of Medicare Medicaid enrollment within thirty (30) months of the settlement date and the anticipated total settlement amount is greater than $250,000.00 over the life of the claimant, have to submit a Medicare-Set-Aside to CMS for approval.

Although Claimant has recently been awarded Social Security Disability, this case does not meet the required threshold for submitting to CMS for approval of the estimated Medicare Set Aside. The Claimant acknowledges that she understands that if she has received any benefits, at any time, from Medicare or Medicaid for conditions that are causally related to her industrial accident, she must contact Medicare/Medicaid to resolve any lien or claim Medicare/Medicaid might have against the proceeds of this settlement. The Employer/Carrier/Servicing Agent is entering into this agreement on the understanding that

the claimant has promised to resolve any claim, lien, or other rights Medicare/Medicaid might have against these proceeds.

The Claimant recognizes that the money received by her in settlement of this claim is designed to last for the remainder of her life, and this is all of the money that she will receive in connection with this workers' compensation claim. Consequently, the Claimant believes that it is appropriate to utilize the language noted in the paragraphs above. Upon payment of the lump sum of $12,500.00, the Employer/Carrier/Servicing Agent's responsibility for future benefits under Florida Statutes, Chapter 440, shall be extinguished.

The Claimant acknowledges, understands and agrees that this amount must be expended for future medical expenses related to the work accident that would be otherwise covered by Medicare before any such claims are submitted to Medicare. The Claimant further acknowledges, understands and agrees that receipts for these expenditures must be maintained in the event that The Centers for Medicare and Medicaid Services requires this at a later time and that failure to utilize these funds as outlined may jeopardize the claimant's future Medicare benefits. The Claimant has completed the Medicare questionnaire form, page 1 and 2, which is attached to, and a part of, this document and stipulates that the information given by the claimant on the medicare form is correct.

10.    **CHILD SUPPORT CONSIDERED:** The parties agree that any outstanding child support arrearage will be deducted from the settlement proceeds and the Claimant and her counsel will be responsible for making payment to the correct agency. If the amount of the child support exceeds the settlement value, the parties agree that one half (½) of the Claimant's net settlement will be allocated for child support.

11.    **WAIVER OF PENALTIES, INTERESTS, AND FORMAL NOTICE:** The Claimant does hereby waive any right she may have to any and all penalties or interest on account of the alleged accidents or occupational disease referenced herein. The parties further agree that if any one section of this agreement shall be found to be void or otherwise ineffective, same shall not serve to nullify the entire agreement and that section(s) shall be severable from the agreement. This agreement constitutes the complete understandings of the parties, and supersedes all prior oral or written representations in agreement with respect to this general release and waiver

of claims herein. The Employer/Servicing Agent does not agree or stipulate to penalties and/or interest on late

payment of settlement proceeds.

12.    **ACKNOWLEDGMENT:** The Claimant hereby acknowledged that she has read, or has had this document

read to her by her attorney.  The Claimant further acknowledges that she understands each and every part of

this General Release and Waiver and hereby voluntarily enters into this agreement without reservation.

Who upon being duly sworn, certifies that the information furnished by her as incorporated in the foregoing

General Release and Waiver for Settlement is true and correct.

Dated this ___1 st___ day of ___May___, 2018.

X _____
EMPLOYEE/CLAIMANT:
Karina Santana-Benchettab

_____
ATTORNEY FOR THE
EMPLOYER/SERVICING AGENT
for Pamela A. Walton, Esquire
Ingram & Bunecky
7365 Merchant Court, Suite 8
Sarasota, FL 34240
Tel. No.: 941-358-7880
Florida Bar #: 996300

_____
ATTORNEY FOR THE CLAIMANT:
Daniel DeCicclo, Esquire
541 S. Orlando Avenue, Suite 308
Maitland, FL 32751
(407) 740-4111
Florida Bar #: 338941

### NOTARY CERTIFICATE

SWORN TO AND SUBSCRIBED before me this ___1st___ day of ___May___, 2018, by Karina

Santana-Benchettab, <u>who is personally known to me</u> or who has produced _____, as identification

and who executed the foregoing settlement agreement.

WITNESS my hand and official seal.

(SEAL)    Notary Public State of Florida
Rhonda L Rayser
My Commission FF 123516
Expires 08/18/2018

_____
Notary Public
My Commission expires: _____

| EMPLOYEE: | Karina Santana-Benchettab |
| EMPLOYER: | Bank of America |
| SOCIAL SECURITY NUMBER: |  |

## GENERAL RELEASE

FOR AND IN CONSIDERATION of the sum of one hundred dollars ($100.00), which has been paid to Karina Santana-Benchettab (from hereinafter referenced as "the undersigned") in conjunction with a lump sum workers' compensation settlement, the receipt and sufficiency of which is hereby acknowledged, the undersigned hereby releases and forever discharges Bank of America, and any of their officers, agents, servants, employees, directors, successors and assigns and all other persons, firms or corporations liable or who might claim to be liable, none of whom admit any liability to the undersigned and all of whom expressly deny any liability from any and all claims, demands, damages, actions, causes of actions or suits of any kind or nature whatsoever, on account of her employment with Bank of America, or cessation thereof, and particularly on account of all injuries and damages, known or unknown, which have resulted or may in the future develop as a result of the undersigned's industrial accident of December 21, 2016, or any other accident, while employed with Bank of America. Specifically, the undersigned releases the above-named parties from any liability for any potential claim that may have existed up through the date of this Agreement including, but not limited to, all claims under the Americans with Disabilities Act, 42 U.S.C. Section 12101 et seq., the Age Discrimination in Employment Act, 29 U.S.C. Section 621 et seq, Family Medical Leave Act, Title VII of the Civil Rights Act of 1964 as amended in 1991, Florida Civil Rights Act, National Labor Relations Act, wrongful termination, workers' compensation retaliation, and any other legal, administrative, or arbitration proceedings which were or could have been filed.

Following the undersigned's industrial accidents, the parties agree to a mutual separation. Claimant maintains that she was not able to continue her employment with Bank of America. Accordingly, the undersigned hereby agrees that she will not re-apply or seek employment with Bank of America, or any of their officers, agents, servants, employees, directors, and successors, at any

time in the future. The undersigned acknowledges that she has contractually agreed not to apply for employment with Bank of America, or any of their officers, agents, servants, employees, directors, and successors in the future and this Release shall constitute a bar of any claim that the undersigned may have should she apply for employment with Bank of America, or any of their officers, agents, servants, employees, directors, and successors in the future and not be hired.

This Release includes any and all outstanding liens or possible liens which may have accrued or are accruing against the undersigned as a result of the aforementioned accident, her employment with Bank of America or cessation thereof, and the undersigned specifically agrees to hold Bank of America and any of their officers, agents, servants, employees, directors, successors and assigns and Ingram & Bunecky, Attorneys at Law, P.A., harmless from any liability with respect to the undersigned's employment, and cessation thereof, and the industrial accident of December 21, 2016.

As further consideration for the aforementioned payment, the undersigned agrees and does hereby release, discharge, and surrender any and all claims, whether or not asserted, against Bank of America or any of their officers, agents, servants, employees, directors, successors, assigns, and any other person or entity so connected to Bank of America, for any other accident of any nature whatsoever, without any limitation thereof.

The undersigned agrees that she will preserve the confidentiality of this Release and she will not discuss or disclose the contents of it to anyone, including but not limited to any past, present or prospective employees/applicants for employment with Bank of America. The Release can be provided pursuant to any Subpoena, Court Order, or request by any entity for the undersigned's application for benefits. OR IRS

The undersigned hereby declares that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise adjustment and settlement of any and all claims, disputes or otherwise, resulting from the aforementioned alleged industrial accident of December 21, 2016, her employment with Bank of America, or cessation thereof, and it is specifically agreed that this Release shall be a complete bar to all claims or suits for injuries or damages under federal, state and local laws including, but not limited to the provisions of 42 U.S.C.A. Section 12101 through 12213, commonly referred to as the

Page 2 of 3

Americans With Disabilities Act, the Age Discrimination in Employment Act, 29 U.S.C., Section 621 et seq, or of whatever nature resulting or to result from said incidents other than whatever remedy the undersigned may be entitled under the Florida Workers' Compensation Act. The undersigned acknowledges that she has been advised that she has up to twenty-one days to consult with an attorney regarding this Release. Further, the undersigned acknowledges that she has been advised that she has the right to revoke this Release within seven days of executing it.

To revoke this Release, the undersigned must advise Bank of America, in writing of the election to revoke it within the seven day period; such written notification must be addressed and delivered to Ingram and Bunecky, P.A., 7365 Merchant Court, Suite 8, Sarasota, FL 34240.

IN WITNESS WHEREOF, we have hereunto set our hands and seal this ___15+___ day of ___May___, 2018.

X _____
Karina Santana-Benchettab

STATE OF FLORIDA
COUNTY OF ___Orange___

SWORN TO AND SUBSCRIBED before me this __15+__ day of __May__, 2018, by Karina Santana-Benchettab, who is personally known to me or who has produced _____, as identification and who executed the foregoing General Release.

WITNESS my hand and official seal.

_____
Notary Public
My Commission expires: _____

(SEAL)

Notary Public State of Florida
Rhonda L Royser
My Commission FF 123516
Expires 09/18/2018

**SOCIAL SECURITY ADMINISTRATION**

Refer To: 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

Office of Disability Adjudication and Review
SSA OHO Hearing Office
Fountain Square II
4925 Independence Pkwy.
Suite 200
Tampa, FL 33634-7551

Date: December 13, 2017

Karina De Milagros Santana
8830 Beacon Lake Drive
Apt. 208
Tampa, FL 33615

## Notice of Decision – Fully Favorable

You will receive this document in both a standard print and large print version. You will receive them separately.

I carefully reviewed the facts of your case and made the enclosed fully favorable decision. Please read this notice and my decision.

Another office will process my decision and decide if you meet the non-disability requirements for Supplemental Security Income payments. That office may ask you for more information. If you do not hear anything within 60 days of the date of this notice, please contact your local office. The contact information for your local office is at the end of this notice.

**If You Disagree With My Decision**

If you disagree with my decision, you may file an appeal with the Appeals Council.

**How To File An Appeal**

To file an appeal you or your representative must ask in writing that the Appeals Council review my decision. You may use our Request for Review form (HA-520) or write a letter. The form is available at www.socialsecurity.gov. Please put the Social Security number shown above on any appeal you file. If you need help, you may file in person at any Social Security or hearing office.

Please send your request to:

> **Appeals Council**
> **Office of Disability Adjudication and Review**
> **5107 Leesburg Pike**

Form HA-L76 (03-2010)

**Suspect Social Security Fraud?**
**Please visit http://oig.ssa.gov/r or call the Inspector General's Fraud Hotline**
**at 1-800-269-0271 (TTY 1-866-501-2101).**

See Next Page

## Exhibit C

Karina De Milagros Santana (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)                                    Page 2 of 3

### Falls Church, VA 22041-3255

### Time Limit To File An Appeal

You must file your written appeal **within 60 days** of the date you get this notice. The Appeals Council assumes you got this notice 5 days after the date of the notice unless you show you did not get it within the 5-day period.

The Appeals Council will dismiss a late request unless you show you had a good reason for not filing it on time.

### What Else You May Send Us

You or your representative may send us a written statement about your case. You may also send us new evidence. You should send your written statement and any new evidence **with your appeal**. Sending your written statement and any new evidence with your appeal may help us review your case sooner.

### How An Appeal Works

The Appeals Council will consider your entire case. It will consider all of my decision, even the parts with which you agree. Review can make any part of my decision more or less favorable or unfavorable to you. The rules the Appeals Council uses are in the Code of Federal Regulations, Title 20, Chapter III, Part 404 (Subpart J) and Part 416 (Subpart N).

The Appeals Council may:

- Deny your appeal,
- Return your case to me or another administrative law judge for a new decision,
- Issue its own decision, or
- Dismiss your case.

The Appeals Council will send you a notice telling you what it decides to do. If the Appeals Council denies your appeal, my decision will become the final decision.

### The Appeals Council May Review My Decision On Its Own

The Appeals Council may review my decision even if you do not appeal. They may decide to review my decision within 60 days after the date of the decision. The Appeals Council will mail you a notice of review if they decide to review my decision.

### When There Is No Appeals Council Review

If you do not appeal and the Appeals Council does not review my decision on its own, my decision will become final. A final decision can be changed only under special circumstances. You will not have the right to Federal court review.

Form HA-L76 (03-2010)

See Next Page

# SOCIAL SECURITY ADMINISTRATION
## Office of Disability Adjudication and Review

## ORDER OF ADMINISTRATIVE LAW JUDGE

**IN THE CASE OF**                    **CLAIM FOR**

                                      Period of Disability, Disability Insurance
Karina De Milagros Santana            Benefits, and Supplemental Security Income
(Claimant)

_____           ▓▓▓▓▓▓▓▓▓▓▓▓
(Wage Earner)                         (Social Security Number)

I approve the fee agreement between the claimant and her representative subject to the condition that the claim results in past-due benefits. My determination is limited to whether the fee agreement meets the statutory conditions for approval and is not otherwise excepted. I neither approve nor disapprove any other aspect of the agreement.

## YOU MAY REQUEST A REVIEW OF THIS ORDER AS INDICATED BELOW

**Fee Agreement Approval:** You may ask us to review the approval of the fee agreement. If so, write us within 15 days from the day you get this order. Tell us that you disagree with the approval of the agreement and give your reasons. Your representative also has 15 days to write us if he or she does not agree with the approval of the fee agreement. Send your request to this address:

> Joan E. Parks Saunders
> Regional Chief Administrative Law Judge
> SSA Office of Hearing Operations
> Suite 20T10
> 61 Forsyth Street SW
> Atlanta, GA 30303-8819

**Fee Agreement Amount:** You may also ask for a review of the amount of the fee due to the representative under this approved fee agreement. If so, please write directly to me as the deciding Administrative Law Judge within 15 days of the day you are notified of the amount of the fee due to the representative. Your representative also has 15 days to write me if he/she does not agree with the fee amount under the approved agreement.

You should include the social security number(s) shown on this order on any papers that you send us.

/s/ *Paul L. Johnston*

Paul L. Johnston
Administrative Law Judge

December 13, 2017
Date

**SOCIAL SECURITY ADMINISTRATION**
Office of Disability Adjudication and Review

**DECISION**

| **IN THE CASE OF** | **CLAIM FOR** |
|---|---|
| | Period of Disability, Disability Insurance |
| Karina De Milagros Santana | Benefits, and Supplemental Security Income |
| (Claimant) | |
| | |
| (Wage Earner) | (Social Security Number) |

**JURISDICTION AND PROCEDURAL HISTORY**

This case is before me on a request for hearing dated January 9, 2015 (20 CFR 404.929 *et seq.* and 416.1429 *et seq.*). A hearing in this matter was initially scheduled for August 24, 2016; however, it was postponed in order to allow the claimant to attend a consultative examination. (Exhibit 7B) The hearing was rescheduled for December 12, 2016, but was rescheduled at the claimant's request due to a death in her family. (Exhibits 13B, 14B) The hearing was again rescheduled and the claimant appeared and testified at a hearing held on February 8, 2017, in Tampa, Florida. Although informed of the right to representation, the claimant chose to appear and testify without the assistance of an attorney or other representative. This hearing was continued to secure additional records regarding the claimant's recent medical care.

A supplemental hearing was scheduled for September 15, 2017, which was postponed due to Hurricane Irma. (Exhibits 19B, 21B, 22B) The claimant appeared and testified at a supplemental hearing held on November 16, 2017, in Tampa, Florida. Ashley Johnson, an impartial vocational expert, also appeared at the hearing. The claimant was represented at the hearing by Wayne Johnson, a non-attorney representative.

The claimant has amended the alleged onset date of disability to February 1, 2017. (Exhibit 16D)

The claimant submitted or informed the Administrative Law Judge about all written evidence at least five business days before the date of the claimant's scheduled hearing (20 CFR 404.935(a) and 416.1435(a)).

**ISSUES**

The issue is whether the claimant is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

See Next Page

With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2017. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful review of the entire record, I find that the claimant has been disabled from February 1, 2017, through the date of this decision. I also find that the insured status requirements of the Social Security Act were met as of the date disability is established.

## APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a) and 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, I must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b) and 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, or work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, I must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c) and 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1522 and 416.922; Social Security Rulings (SSRs) 85-28 and 16-3p). If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, I must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, I must first determine the claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, I must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

Next, I must determine at step four whether the claimant has the residual functional capacity to perform the requirements of her past relevant work (20 CFR 404.1520(f) and 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b) and 416.965). If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g) and 416.920(g)), I must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience. If the claimant is able to do other work, she is not disabled. If the claimant is not able to do other work and meets the duration requirement, she is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(f), 404.1560(c), 416.912(f) and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, I make the following findings:

**1. The claimant's date last insured is December 31, 2021.**

**2. The claimant has not engaged in substantial gainful activity since February 1, 2017, the amended alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).**

The claimant testified that she returned to work for Bank of America as a senior fraud claims analyst in August 2016, where she continued to work until February 2017. She testified that she briefly attempted to return to work in August 2017; however, was unable to do so due to respiratory symptoms related to her asthma as explained further below in section 3. The claimant's employment records are consistent with her testimony, which indicates that the claimant had earnings at substantial gainful activity levels through the first quarter of 2017. (Exhibit 15D) Based on the claimant's earning records and testimony, I find that the claimant has

not engaged in substantial gainful activity since February 1, 2017, the amended alleged onset date.

**3.    The claimant has the following severe impairments: severe visual defects; keratoconus; cataracts; degenerative disc disease, thoracic, and lumbar spine, status post lumbar surgeries; history of cerebrovascular accidents (CVAs) with right sided weakness; mild neurocognitive disorder; adjustment disorder with mixed anxiety and depressed mood; asthma; obesity;  (20 CFR 404.1520(c) and 416.920(c)).**

The above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28.

There are several other medical conditions referenced in the medical record and alleged by the claimant, including hypertension; hyperlipidemia, allergies; alpha thallasemia with history of blood transfusions; intermittent iron deficiency anemia and B12 deficiency; history of syncope and collapse; history of rash rule out scabies; history of gastric bypass surgery; history of multiple hernias status post abdominal surgeries; migraine headaches; incontinence; history of multiple lymphosarcoma tumors status post surgeries; history of ovarian cysts status post cystoscopy; history of abdominal and pelvic masses, status post surgeries; history of pulmonary nodule; history of bile duct stones, status post removal; history of abdominal pain. These conditions do not satisfy the requirements to be severe, medically determinable impairments.  To the extent that these conditions are based on objective evidence from an acceptable medical source, the evidence does not support that they cause more than minimal limitation in the claimant's ability to perform basic work activities for twelve consecutive months relevant to this decision and are therefore non-severe.

**4.    The severity of the claimant's impairments meets the criteria of section 2.02 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 416.920(d) and 416.925).**

In making this finding, I have considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p. I also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927.

In considering the claimant's symptoms, I must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by

Karina De Milagros Santana [REDACTED]                                   Page 5 of 8

objective medical evidence, I must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.

The severity of the claimant's visual impairments meet listing 2.02, *Loss of central visual acuity.* The claimant testified that she is legally blind and has significantly decreased and blurred vision, with reduced peripheral vision. The claimant is able to use computers with larger monitors, increased fonts, and assistive software, and is able to read holding something very close to her face or using a magnifying glass; however, generally is unable to function without these accommodations. She has been under the care of retinal specialist Dr. Leonard S. Kirsch of The Eye Institute of West Florida since May 2014 for diagnoses of severe visual defects, keratoconus, cataracts, macular puckering, and pigment retina dystrophy. (Exhibits 4F, 10F, 14F, 16F, 26F) At that time, the claimant was considered legally blind; presenting with visual acuity of two feet/200 in the right eye and hand motions in the left eye. Dr. Kirsch noted that the claimant's visual acuity has continued to decline. While Dr. Kirsch's records also note that the claimant has severe visual field defects in both eyes, the specific visual field measurements necessary to determine whether the claimant meets the criteria of 2.03 or 2.04 are not contained in the medical evidence of record. However, the claimant's remaining vision in the better eye, in this case, the right eye, after best correction is clearly less than 20/200; therefore, the claimant meets the criteria of listing 2.02.

In addition to her visual impairments, the claimant also has other severe impairments that affect the claimant's ability to perform basic work activity; however, do not meet the criteria of any listing.

The claimant has a history of back pain, particularly in her low back, with left lower extremity radiculopathy, which she testified started after a motor vehicle accident in 2005. MRIs of the claimant's lumbar and thoracic spine showed degenerative changes and a herniation at L4-L5; for which she underwent a L4-L5 laminectomy with microdiscectomy in 2011. (Exhibit 2F) The claimant testified that she has ongoing severe low back pain and no sensation in her left leg, and that she occasionally uses a walking stick to ambulate. Additionally, the claimant testified to a history of several cerebrovascular accidents (CVAs) or strokes in 2005 and 2008, which she alleges left her with residual right sided weakness, slurred speech, and memory loss. The claimant is also obese. Although the claimant had gastric bypass surgery, she has continued to weigh in excess of 200 pounds, which is consistent with obesity.

For further evaluation of her overall condition, the claimant was also examined by consulting physician Dr. Robin Hughes in September 2016. (Exhibit 18F) Dr. Hughes noted the claimant's visual impairments as consistent with Dr. Kirsch's reports, as well as tenderness and spasm in the lumbar spine, with positive Minor's sign and Kemp's test; but negative straight leg raising. The claimant demonstrated difficulty with gross and fine dexterity with weakness of the right hand, with reduced grip strength and increased deep tendon reflexes on the right upper and lower extremity. The claimant reported altered sensation to the right arm and both legs from knees to feet. While the claimant was able to walk, her gait was antalgic and she reportedly required an assistive device.

See Next Page

For further evaluation of her mental impairments, specifically, her alleged cognitive deficiencies, depression, and anxiety, the claimant was referred for a consultative examination with psychologist Dr. Fred Alberts, Jr. in September 2016. (Exhibit 17F) However, due to the claimant's visual impairments, the results of the Wechsler Memory Scale - Fourth Edition (WMS-IV) were essentially invalid; although Dr. Alberts assessed the claimant based on the auditory tasks as functioning far below the claimant's estimated average to high average intellectual ability. Dr. Alberts assessed the claimant as having a mild neurocognitive disorder and adjustment disorder with mixed anxiety and depressed mood.

The claimant has the following degree of limitation in the four broad areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders listings in 20 CFR, Part 404, Subpart P, Appendix 1: a moderate limitation in understanding, remembering, or applying information, a moderate limitation in interacting with others, a moderate limitation in concentrating, persisting, or maintaining pace, and a moderate limitation in adapting or managing oneself.

The claimant also has a history of asthma, allergies, and sensitivity to perfumes, chemicals, dusts, and other pulmonary irritants. As briefly mentioned above, the claimant did begin working at Bank of America in August 2016. In November 2016, the claimant began having severe respiratory complaints including shortness of breath, wheezing, cough, and chest tightness, which she alleges were due to construction and renovations in the office building, which exacerbated her asthma and led to several hospital visits with breathing treatments. The claimant attempted to continue working; however, continued to have symptoms and required additional hospitalization. The claimant has received treatment through workers' compensation, as well as from her primary care physician. (Exhibits 24F, 25F, 27F)

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. According to SSR 16-3p, it is not necessary to provide information on the intensity, persistence and limiting effects of the symptoms because this listing does not specifically state otherwise and all other required findings are present.

I have considered the Cooperative Disability Investigations Unit (CDI) investigation report; according to which the claimant was observed functioning independently, reading, walking, shopping, and driving a vehicle. (Exhibit 11F) The claimant testified regarding these observations, acknowledging her abilities and explaining that she was caring for her husband who had a recent heart attack and broken leg, and that she was able to drive with the assistance of a smart phone application Be My Eyes. I accept the claimant's testimony clarifying the CDI observations and find that her testimony is generally consistent with the medical evidence of record.

Although I find that the claimant meets the criteria of listing 2.02 and, thus, the sequential evaluation ends at step two and it is not necessary to address the claimant's specific functional abilities, I have considered the opinion evidence contained in the record.

See Next Page

Karina De Milagros Santana~~~~~~~~~~                                    Page 7 of 8

I give little weight to the opinion of State agency reviewing physician Dr. Irene Lipinski, who opined at the reconsideration level that the claimant did have severe impairments; however, did not meet the criteria for any listing. (Exhibit 3A) The claimant's ophthalmology records contained in the record document objective findings that meet the criteria for listing 2.02.

I reject the letters provided by the claimant's ophthalmologist, Dr. Kirsch, insofar as he concludes that the claimant is not able to work. (Exhibits 14F, 26F) While Dr. Kirsch's examination findings ultimately do support a finding that the claimant meets the criteria of listing 2.02 and a finding of "disabled" is appropriate, the determination of disability is reserved to the Commissioner of Social Security.

I give great weight to the findings and assessments of consulting physician Dr. Hughes. (Exhibit 18F) Dr. Hughes's assessment of the claimant and her functional abilities is well supported by his physical examination findings and is consistent with the rest of her treatment records.

I give some weight to the medical source statement provided by consulting psychologist Dr. Alberts. (Exhibit 17F) I agree that the record evidence supports limitations in the claimant's ability to understand, remember, and apply information; however, not to the degree assessed by Dr. Alberts. Dr. Alberts noted that the validity of his testing was questionable due to the claimant's visual impairments, and furthermore, the claimant was able to return to work since this assessment in a fairly complex position, indicating that she does not have more than moderate limitations in mental functioning.

I give very little weight to the various work restrictions assessed by the physicians involved in the claimant's workers' compensation claim with Bank of America. (Exhibits 23F, 24F, 27F) These providers assessed limitations pursuant to Florida workers' compensation law, which differs from the applicable regulations in disability determinations in requiring particular evidentiary findings and causal relationship to an industrial accident or injury.

Although the claimant has a history of severe impairments, including severe visual defects, she continued to engage in substantial gainful activity through February 2017. However, the claimant has not engaged in substantial gainful activity since February 1, 2017 and her severe medical conditions existing at that time meet the criteria of listing 2.02 and support a finding of "disabled".

**5.    The claimant has been under a disability as defined in the Social Security Act since February 1, 2017, the amended alleged onset date of disability, and the disability is expected to last at least twelve consecutive months (20 CFR 404.1520(d) and 416.920(d)).**

### DECISION

Based on the application for a period of disability and disability insurance benefits filed on May 14, 2014, the claimant has been disabled under sections 216(i) and 223(d) of the Social Security Act since February 1, 2017.

See Next Page

Karina De Milagros Santana (  )                    Page 8 of 8

Based on the application for supplemental security income filed on May 14, 2014, the claimant has been disabled under section 1614(a)(3)(A) of the Social Security Act since February 1, 2017.

The component of the Social Security Administration responsible for authorizing supplemental security income will advise the claimant regarding the nondisability requirements for these payments and, if the claimant is eligible, the amount and the months for which payment will be made.

The workers' compensation offset provisions at 20 CFR 404.408 may be applicable.

/s/ *Paul L Johnston*
Paul L. Johnston
Administrative Law Judge

December 13, 2017
Date

Karina De Milagros Santana (███████████)                              Page 3 of 3

**If You Have Any Questions**

We invite you to visit our website located at www.socialsecurity.gov to find answers to general questions about social security.  You may also call (800) 772-1213 with questions.  If you are deaf or hard of hearing, please use our TTY number (800) 325-0778.

If you have any other questions, please call, write, or visit any Social Security office.  Please have this notice and decision with you.  The telephone number of the local office that serves your area is (855) 433-5873.  Its address is:

Social-Security-Administration
4010 Gunn Highway
Suite 100
Tampa, FL 33618-8744


Paul L. Johnston
Administrative Law Judge


Enclosures:
Form HA-L15 (Fee Agreement Approval)
Decision Rationale


cc:     Wayne Johnson
        Law Office of De Ciccio & Johnson
        541 S. Orlando Ave.
        Ste. 308
        Maitland, FL 32751-5669

Form HA-L76 (03-2010)

MetLife Disability
PO Box 14590
Lexington, KY 40512-4590

**MetLife®**

March 6, 2018

Disability Claims
Metropolitan Life Insurance Company
Claim Number: 741801260568
ID Number: 28460397
Employer: BANK OF AMERICA

Karina Santana Benchettab
8830 Beacon Lakes Drive
Apt 208
Tempe, FL 33615

## We approved your claim

### Why we're contacting you

We are sorry to hear about your absence and wish you well in your recovery. This letter outlines what you need to know about your claim for benefits under the Bank of America Long-term Disability plan (the "Plan").

### What you need to know

Our records show you last worked on September 8, 2017. In order to qualify for Long-term Disability (LTD) benefits you must satisfy an elimination period which is 180 days. As a result, we have approved your disability claim starting on March 10, 2018.

- We have determined that you are disabled and unable to perform the duties of your own occupation as a Client Service Representative II. To continue to receive LTD benefits, you must meet the requirements of the definition of disability as outlined in the Plan and satisfy all other Plan requirements. See the Additional Information about your claim section below for the Plan's definition of disability.
- You may be required to participate in an approved Vocational Rehabilitation Program. MetLife offers these services to employees at no additional cost to you. We will collaborate with you and your health care provider(s) to develop an appropriate return to work plan.

### What you need to do

You are required to periodically submit medical information to us to demonstrate your continued disability. When we need information we will follow up with you and your health care provider(s), as appropriate.

- MetLife offers several convenient ways for you to submit your information:
  - Contacting us by phone
  - Sending it via fax to 1-844-837-5066
  - Sending by mail to MetLife Disability, PO Box 14590, Lexington, KY 40512-4590, or
  - You may also view and update your claim information (including sending messages or attachments related to your claim) using the MetLife MyBenefits web portal at www.mybenefits.metlife.com.

Please include your claim number on any documents sent to us.

- You must also contact us if there are any changes to the following:
  - Health care provider(s)
  - Medical condition(s)
  - Address
  - Phone number, or
  - Your return to work status. We offer Return to Work Services at no cost to you. If you return to work in some capacity, you may be eligible for additional benefits.
- Please contact us immediately if you are in receipt of or eligible to receive "other income" as listed in the Additional Information about your claim section below. We will need a copy of the decision notice. Receipt of other income benefits may result in an LTD benefit overpayment. Under these circumstances, you are required to make full and immediate reimbursement to us equal to any overpayment.

Please submit the following forms initially mailed to you on January 31, 2018, by April 2, 2018.

---

**Exhibit D**

MetLife Disability
PO Box 14590
Lexington, KY 40512-4590

**MetLife®**

October 11, 2018

Disability Claims
Metropolitan Life Insurance Company
Claim Number: 741801280588
ID Number: 26469397
Employer: BANK OF AMERICA

Attorney Wayne Johnson
RE: Karina Santana Benchettab
8830 Beacon Lakes Drive, Apt 208
Tampa, FL 33615

## Important information about your claim

### Why we're contacting you

This letter confirms you currently receive a Long-term Disability (LTD) monthly benefit in the amount of $667.00. This is the $1,417.00 gross amount less $750.00 due to Social Security Disability.

### What you need to know

Provided you remain disabled and continue to meet all of the Bank of America's Long-term Disability plan requirements, you will continue to receive an LTD benefit until September 8, 2019. Please be advised that the amount of LTD benefits you receive may be offset by other income you may become eligible to receive. The LTD benefit amount noted in this letter is not guaranteed for the remainder of the benefit period.

Any benefits paid during the approved Short-term Disability period dating from September 9, 2017 thorugh March 9, 2018 would need to be obtained through Bank of America for income verification.

We previously requested a copy of the initial approval letter for Social Security Disability benefits but have not received a copy of the letter to date. Please submit this letter to us along with any other correspondence received from Social Security regarding your benefits.

The Plan states that other income includes the amount of the Other Benefit Sources listed below. The reduction will only relate to amounts from Other Benefit Sources received as a result of the same disability and inability to work for which You are claiming benefits under this certificate.
1. any disability or retirement benefits which You, Your Spouse or child(ren) receive or are eligible to receive, (including early retirement benefits that have been voluntarily elected) because of Your disability or retirement under:
• Federal Social Security Act; You must apply for such benefits through the highest appeal level available under the plan. With respect to any reduction of Disability benefits by Federal Social Security benefits, We will make such reduction based on the amount of the Federal Social Security benefits You, Your Spouse or child(ren) receive prior to any reduction of such Federal Social Security benefits for payment of Medicare premiums;
• Railroad Retirement Act;
• any state or public employee retirement or disability plan including State Teachers Retirement System (STRS) and/or Public Employee Retirement System (PERS). You must apply for such benefits through the highest appeal level that is applicable to such benefits and available under the plan;
• any pension or disability plan of any other nation or political subdivision thereof.
2. any amount You receive representing lost income as a result of a disability under:
• workers' compensation or a similar law which provides periodic benefits;
• veterans' benefits;
• a government compulsory benefit plan or program which provides payment for loss of time from Your job due to Your disability, whether such payment is made directly by the plan or program, or through a third party;
• unemployment insurance law or program.
3. 50% of any amount You receive representing lost income as a result of a disability under:
• laws providing for maritime maintenance and cure;


00000552G 0002 0003 86
12446 P3 PEDT1010120134440000

**Exhibit E**

• The Jones' Act

4. any income that You receive from working while Disabled to the extent that such income reduces the amount of Your Monthly Benefit as described in REHABILITATION INCENTIVES. This includes but is not limited to salary, commissions, overtime pay, bonus or other extra pay arrangements from any source.

5. any employer sponsored paid parental or family leave program

6. any government compulsory paid family leave program

7. unreduced retirement benefits for which you are eligible under a group pension plan at the later of age 62 or the plan's normal retirement age, but only to the extent that such benefits were paid for by an employer.

## We're here to help

You can reach your Claims Specialist, Sharon Deforge, by:

- Phone: 1-888-245-2920, ext. 54349. If Sharon Deforge is not available, you may speak with a representative Monday through Friday at 1-888-245-2920 from 8 a.m. to 11 p.m. Eastern Time. Please have your claim number available to receive faster service.
- Fax: 1-844-837-8086
- Email: BAC_Leaves@metlife.com

You may also view and update your claim information (including sending messages or attachments related to your claim) using the MetLife MyBenefits web portal at www.mybenefits.metlife.com.

Note: *If you need information about your benefits or would like to get a copy of the Long-term Disability employee guide for step-by-step instructions while you are on leave, you can access mybenefitsresources.bankofamerica.com. You can also contact the Bank of America Global HR Service Center for this information at 1.800.556.6044 Monday-Friday between 8:00 a.m. and 8:00 p.m. Eastern Time.*

METLIFE DISABILITY
PO BOX 14590
LEXINGTON KY 40512-4590


000005520 0001 0003 12446

Attorney Wayne Johnson
541 S. Orlando Ave., Suite 308
Apt 208
Maitland, FL 32751-5669

00000520 0001 0003 85
12446 F3 MLPIB101201246460000

**Exhibit F**

# Retirement, Survivors and Disability Insurance

Social Security Administration

Important Information

Office of Central Operations
1500 Woodlawn Drive
Baltimore, Maryland 21241-1600

Date: June 8, 2018
Claim Number: ⬛⬛⬛⬛⬛⬛ A                    VI

KARINA SANTANA BENCHETRIT
8830 BEACON LAKES DR APT 209
TAMPA FL 33615-8489

When you received Social Security benefits in the past on the above claim number, you were overpaid $21,541.13. We have tried several times to collect this amount, but it has not been repaid. In a letter we sent to you (or your representative) earlier, we explained how this overpayment happened. We also told you about your right to question the decision about your overpayment and to ask that we not recover the overpayment. This is to inform you about some actions we may take to collect the amount you owe.

**Actions We May Take To Collect The Amount You Owe**

The law permits us to take any or all of the following actions to collect the amount you owe if you do not repay it:

- We may ask the Department of the Treasury (Treasury) to withhold the amount you owe from any Federal payments you may be due, including your income tax refund.

- Treasury may request that your State withhold the amount you owe from any State payments you may be due, including your income tax refund.

- We may send information about the amount you owe to credit bureaus.

- We may order your employer to withhold and send us a portion of your pay.

Later in this letter, we explain what you can do to stop us from taking any of these actions.

See Next Page



## Your Federal And State Payments May Be Affected

Treasury can withhold money from Federal payments you may be due in the future under your Social Security Number. Treasury may ask your State to withhold money from any State payments you may be due in the future. The most common Federal and State payments are your income tax refunds.

## If You Are Filing A Joint Tax Return

If you are married and filing a joint income tax return, your spouse may be entitled to receive a portion of the joint refund. You should contact the Internal Revenue Service before you file your joint return to find out how to protect your spouse's share.

## How Your Credit May Be Affected

We will report to credit bureaus your name, address and Social Security Number as shown on the first page of this notice, along with the following information.

| | |
|---|---|
| Date of birth | 06/15/1972 |
| Date the amount you owe became overdue | 11/24/2012 |
| Date of your last payment | 06/20/2016 |

Amount you owe     $21,514.13

If you think that any of this information is not correct, please tell us within 60 days of the date of this letter.

Credit bureaus are allowed to show the information about the amount you owe on credit reports about you. These reports are used by banks, credit card companies and other parties when they decide to make loans and grant credit. You can be refused a loan or credit because of your overdue debt.

When we report the amount you owe to credit bureaus, we will tell them of any payments you make that reduce the amount you owe.

## We May Collect Part Of Your Pay From Your Employer

The law allows us to collect the overpayment from your pay. Your employer to withhold and send us as much as ...

Page 3 of

NOTE: The law prohibits your employer from firing you, laying you off or taking other disciplinary actions against you based on an order from us to withhold part of your pay.

## Were You Fired Or Laid Off From A Job?

We will not order your employer to withhold part of your pay if you were fired or laid off from a job and you have not had 12 continuous months of work since then. If this is true about you, tell us so in writing or call or visit any Social Security office.

## How To Stop Us From Taking These Actions

We will take these collection actions unless, within 60 days from the date of this letter, you

- pay us back the full amount you owe, or

- agree to a definite plan for repaying this amount and repay it according to the plan, or

- ask us to review our finding that you owe the amount stated in the beginning of this letter and that we have the right to collect it, or

- ask us to waive collection of the overpayment, or

- ask us to review our plan to collect up to 15 percent of your disposable pay.

## How To Pay Us Back

You should refund this overpayment within 60 days of the date of this letter. Use the enclosed "Payment Stub" and envelope. The "Payment Stub" explains the ways you can make payment.

If you cannot refund the full amount now, you should

- contact any Social Security office to arrange a definite plan for repayment, and

- make regular payments according to the plan.

## Do You Want Us To Review Our Findings

[text too faded to read reliably]

## You May Not Have To Pay Us Back

Sometimes we can waive the
[faded text] of the overpayment
[faded text]

- [faded] such as
  housing or medical

If you think these are true you
can ask for a waiver and if you
you fill out the form. Then
waiver within 60 days of the
collection action which [faded]

## If We Cannot Approve Your [faded]

[text too faded to read reliably]

# Social Security Administration
## Supplemental Security Income
Notice of Planned Action

SOCIAL SECURITY
4010 GUNN HIGHWAY
SUITE 100
TAMPA FL 33618
Date: July 3, 2018
Claim Number: ▓▓▓▓▓▓ DI

ıｺｌｎ｜ıｺˡ｜ıｺˡｌｉ｜ı･ˡ｜ıｌｌｉｌｌ｜ｌｌ｜ｉｌ｜ı･ｌ｜ｊ｜ｅｍ･ｍｌｌｉｌｌ｜

```
0001833  00001919     1 MB  0.424 SN6LNA T9 P1
SSI M10 06/28 949 18S1526H84168
WAYNE JOHNSON
541 S ORLANDO AVE
STE 308
MAITLAND FL 32751-5669
```

### COPY OF OUR LETTER TO KARINA D SANTANA BENCHETTAB, YOUR CLIENT

The following is an exact copy of a letter sent to KARINA D SANTANA BENCHETTAB today. Her address and telephone number are shown below. If you no longer wish to receive copies of letters that we send to her, please let us know.

> APT 208
> 8830 BEACON LAKES DR
> TAMPA FL 33615-3489
> Telephone number: 813-650-4938

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

We are sending this letter to you in both a standard print version and a large print version. You will receive them in separate envelopes.

We plan to lower your monthly Supplemental Security Income (SSI) payment from $750.00 to $0.00 beginning August 2018. The amount will change because your other income increased.

We are also changing the amounts you were due for January 2018 through July 2018. Your amounts changed because your other income increased.

### Your Past Payments

The following chart shows your previous amounts and the corrected amounts for the months that changed.

See Next Page

## Exhibit G


07/03/2018

| From | Through | Previous Monthly Amount | Corrected Monthly Amount |
|------|---------|-------------------------|--------------------------|
| January 2018 | January 2018 | $727.50 | $0.00 |
| February 2018 | July 2018 | $750.00 | $0.00 |

### Information About Your Back Payments

We will send you another letter about any overpayment.

### Information Used In Making The Decision

- Your spouse had monthly income of $1,870.66 for October 2017 through December 2017 and $800.00 for January 2018 through March 2018. This amount does not affect your Supplemental Security Income payment.



- You have monthly income which must be considered in figuring your eligibility as follows:

  -- Your verified wages of $2,762.49 for October 2017, $2,825.28 for November 2017, $2,401.49 for December 2017 and $6,987.00 for January 2018 through March 2018.

  — Your estimated wages of $5,060.00 for April 2018 through July 2018 and $5,060.00 for August 2018 on.

### Information About Medicaid

You may be getting Medicaid from your State. If you are, you may be able to keep your Medicaid coverage even though your SSI payments are stopping.

We will be in touch with you soon about your Medicaid coverage. In the meantime, your Medicaid coverage should not change until we talk to you.

### Your Reporting Responsibilities

Even though you are not due payments, you are still considered to be eligible under the SSI program. You should report any event that might affect your eligibility or allow you to receive payments again.

### You Can Review The Information In Your Case

The decisions in this letter are based on the law and information in our records. You have a right to review and get copies of the information in our records that we used to make the decisions explained in this letter. You also have a right to review and copy the laws, regulations, and policy statements used in deciding your case. To do so, please contact us. Our telephone number and address are shown under the heading "If You Have Questions".

SSA-L8155



07/03/2018

**Things You Should Know**

- We have made a new decision on your case. It replaces all earlier decisions for the above period.

- We are also sending this information to WAYNE JOHNSON.

**If You Disagree**

If you disagree with this decision, you have the right to appeal. A person who did not make the first decision will decide the appeal. We call this appeal a reconsideration. When you appeal, we review your entire case, even the parts with which you agree. We consider any new facts we have and then make a new decision. The new decision could be more favorable, less favorable, or the same as the one you already have.

**Time To File An Appeal**

- You have 60 days to file an appeal in writing.

- The 60 days start the day after you receive this letter. We assume you received this letter 5 days after the date on the letter.

- You must have a good reason for waiting more than 60 days to file an appeal.

**Appeal In 10 Days To Keep Receiving The Same Payment**

If we receive your written appeal within 10 days, your payment amount will not change until we decide your case.

- The 10 days start the day after you receive this letter.

- If you lose your appeal, you might have to pay back some or all of this money.

However, even if you appeal within 10 days, we may stop your payment in August 2018 if both of the following are true:

- Our new decision is the same as the one you appealed, and

- We send or give you a letter with our new decision in time to stop the payment.

**How To Appeal**

You can file an appeal with any Social Security office. You must request the appeal in writing. Please use our "Request for Reconsideration" form, SSA-561-U2, which is available on our website at www.socialsecurity.gov on the Internet. You can also contact us by phone, by mail, or come into the office to obtain the form. If you need assistance, we can help you fill out the form.

SSA-L8155





07/03/2018

There are 3 types of appeals.  In most cases, you can choose the one you want.

- <u>Case Review:</u>  You will not meet with the person who decides your case.  You have a right to review the facts in your file.  You can give us more facts to add to your file.  Then we will decide your case again.  This is the only kind of appeal you can have for a medical decision.

- <u>Informal Conference:</u>  You will talk with the person who decides your case either in person or over the phone.  You can tell that person why you disagree with our decision.  If you meet with us in person, it may help your case.  You have a right to review the facts in your file.  You can give us more facts to add to your file.  You can have other people help explain your case.  Then we will decide your case again.

- <u>Formal Conference:</u>  This is a meeting like an informal conference.  The difference is we can require people to come to help prove you are right.  We can require them to bring important papers about your case, even if they do not want to help you.  You can question these people at your meeting.  Then we will decide your case again.

### If You Want Help With Your Appeal

You may choose to have a representative help you.  We will work with this person just as we would work with you.  If you decide to have a representative, you should find one quickly so that person can start preparing your case.

Many representatives charge a fee only if you receive benefits.  Others may represent you for free.  Usually, your representative may not charge a fee unless we approve it.  Your local Social Security office can give you a list of groups that can help you find a representative.

If you get a representative, you or that person must notify us in writing.  You may use our Form SSA-1696-U4 Appointment of Representative.  Any local Social Security office can give you this form.

### Suspect Social Security Fraud?

If you suspect Social Security fraud, please visit http://oig.ssa.gov/report or call the Inspector General's Fraud Hotline at 1-800-269-0271 (TTY 1-866-501-2101).

### If You Have Questions

If you have any questions, please:

- Visit our website at www.socialsecurity.gov to find general information about SSI;

SSA-L8155



07/03/2018

- Visit our website at www.socialsecurity.gov/SSIrules/ to find the law and regulations about SSI eligibility and payments;

- Call us toll-free at 1-800-772-1213 or call your local office at 855-433-5873. We can answer most questions over the phone. If you are deaf or hard of hearing, our toll-free TTY number is 1-800-325-0778; or

- Write or visit any Social Security office. If you plan to visit an office, you may call ahead to make an appointment. The office that serves your area is located at:

> SOCIAL SECURITY
> SUITE 100
> 4010 GUNN HIGHWAY
> TAMPA FL 33618

Please have this letter with you if you call or visit an office. If you write, please include a copy of the first page of this letter. It will help us answer your questions. We are busiest early in the week and early in the month. If your business can wait, it is best to call or visit at other times.

*Social Security Administration*



SSA-L8155

Exhibit H

Job Abandonment

NR ADJUSTED

Benchmab

Dear Benchmark,

You have not reported to work since December 26, 20418 and you have not contacted me to explain your absence. I am concerned about you and your intentions toward your job.

I request that you contact me immediately either in person or by phone to provide an acceptable reason for your absence and failure to follow call-in procedures. If I have not heard from you within three (3) working days from the date of this letter, I will assume that you have voluntarily resigned, effective [3 days from the date of the letter] and I will separate your employment accordingly.

Please return any Bank owned property that you have in your possession

Sincerely,

**Bank of America**

October 11, 2018

Karina Santana Benchettab
2830 Beacon Lakes Drive
Apt 208
Tampa, FL 33510

RE: Karina Santana Benchettab

To Whom It May Concern:

Please be advised that Karina Santana Benchettab is employed at Bank of America.

Karina's employment began on 08/08/2016 and continues to date. She is employed Full-Time as a Client Svcs Rep II and is earning a salary of $17.60 hourly. Karina is scheduled to work 40 hours per week.

Her Leave of Absence details are as follows:

| Date | Reason | Estimated Last Day of Leave |
|---|---|---|
| 12/27/2016 to 01/11/2017 | Medical - Unpaid | 01/11/2017 |
| 02/09/2017 to 03/07/2017 | Medical - Unpaid | 03/06/2017 |
| 03/09/2017 to 09/15/2017 | STD Waiting Period - Paid | 09/20/2017 |
| 09/15/2017 to 11/10/2017 | Short Term Disability - Paid | 01/27/2018 |
| 11/11/2017 to 03/09/2018 | Short Term Disability 70% - Paid | 09/14/2033 |
| 03/10/2018 | Long Term Disability - Unpaid | 09/14/2033 |

As per company policy, we can verify only the information contained in this letter. Please feel free to contact the Bank of America Global HR Services Center at 1-800-556-6044 with any questions or concerns.

Sincerely,

Bank of America Global HR Services

Exhibit I



December 05, 2018

Karina Santana Banchaltab
18830 Beacon Lakes Drive
Apt 208
Tampa, FL 33616

RE: Karina Santana Banchaltab

To Whom It May Concern:

Please be advised that Karina Santana Banchaltab is employed at Bank of America.

Karina's employment began on 03/06/2016 and continues to date. She is employed Full-Time as a Cient
Svce Rep II and is earning a salary of $17.83 hourly. Karina is scheduled to work 40 hours per week.

She received her last pay check dated on 12/05/2018.

As per company policy, we can verify only the information contained in this letter. Please feel free to
contact the Bank of America Global HR Services Center at 1-800-556-6044 with any questions or
concerns.

Sincerely,

Bank of America Global HR Services

Bank of America Global Human Resource Services Center
P O Box 1425
Lincolnshire, IL 60069-1425

**Exhibit J**

January 23, 2019

     RE:         Katrina Santana-Benchetabb

To Whom It May Concern,

   Please be advised that Ms. Karina Santana –Benchetabb is not an employee of the Bank of America or its subsidiaries.  She has not been employed by the bank in any manner since of May 1, 2018.

   Any information provided to you otherwise by the Bank of America was an oversight and the bank sincerely apologizes for any confusion this mistake has caused.  Should you need any further information or wish to further discuss, please feel free to contact me at the contact provided below.  I hope this letter helps to clear up any confusion.

                          Sincerely,

                          Donna Kluttz
                          Insurance Risk Manager
                          Bank of America

# Exhibit K

Bank of America

LAW OFFICE OF
# DeCICCIO & JOHNSON
541 S. ORLANDO AVENUE, SUITE 308
MAITLAND, FLORIDA 32751-5669
TELEPHONE (407) 740-4111
FACSIMILE (407) 740-4011

DANIEL DeCICCIO*•
WAYNE JOHNSON*

* BOARD CERTIFIED IN WORKERS' COMPENSATION
• LICENSED IN FL, MA & RI

WEB SITE
www.deciccio.com

E-MAIL
wayne.johnson@deciccio.com
rhonda.rnysery@deciccio.com

April 22, 2019

VIA FACSIMILE AND ELECTRONIC MAIL
Ms. Pam Walton, Esquire
Brady Law Group
5601 Mariner St., Ste. 300
Tampa, FL 33609-3416

RE:   **Karina Santana-Benchettab**
Claim Number       : ▮▮▮▮▮▮
DOB                : ▮▮▮▮▮▮
Our File No.       : 18.00002

Dear Ms. Walton:

My client has again requested I contact you. Her situation is urgent. We have provided you with correspondence where Bank of America erroneously states that Ms. Karina Santana-Benchettab remains employed with Bank of America. Bank of America has submitted this clearly false and fraudulent information to Social Security and Met Life. Ms. Santana has had no income and has now lost her earned income tax credit because of this.

The Bank of America employee handbook states that Ms. Santana Benchettab should receive long-term disability until age 62 and have her medical benefits provided for. Instead, because of Bank of America, Met Life has stopped her LTD and Aetna (her health insurance provider) has written her doctors demanding repayment. Her doctors have been intimidated and have ended their doctor-patient relationship because of Bank of America.

Ms. Santana-Benchettab appeared before an impartial Social Security administrative law judge on November 16, 2017 who after reviewing all of the evidence found her to be credible and totally disabled. As you, Ms. Santana-Benchettab signed a settlement agreement on May 1, 2018 which acknowledged she was no longer employed with Bank of America. It is therefore inconceivable that Bank of America is telling individuals that Ms. Santana-Benchettab is employed.

**Exhibit L**

April 22, 2019
Page 2

We understand that large companies can make mistakes, but this is well beyond that. Bank of America, unsolicited, is reporting that not only is Ms. Santana-Benchettab still an employee, but also that she is working and earning income. Written documentation of this was provided in December, 2018. A financial institute is not going to make a mistake like this and report they are paying someone when they are not.

Ms. Santana-Benchettab has met with Social Security. The Social Security supervisor told her on February 26, 2019 that Bank of America was still telling them that Ms. Santana-Benchettab was working. I had provided you with a revised statement that Social Security needs so that it could be made clear that Ms. Santana-Benchettab is not and has not worked for Bank of America since August, 2017. We have not received the revised statement back from you.

Ms. Santana-Benchettab has causes of action against Bank of America for retaliation and intentional infliction of emotional distress. We are again asking for a statement on Bank of America letterhead in accord with the language we previously proposed below.

Please be advised that Ms. Karina Santana-Benchettab is not an employee of the Bank of America or its subsidiaries.

Ms. Santana-Benchettab worked for Bank of America from August, 2016 to February, 2017. She then stopped working for medical reasons. She briefly returned to work in August, 2017, but stopped working again and was on short-term disability/long-term disability from August, 2017 until May 1, 2018 when her association with Bank of America was mutually ended. She did not work nor earn any income from Bank of America after August, 2017.

Any information provided to you otherwise by the Bank of America was an oversight and the Bank sincerely apologizes for any confusion this mistake has caused. Should you need any further information or wish to further discuss, please feel free to contact me at the contact provided below. I hope this letter clears up any confusion.

The above letter must be produced to the undersigned within five days. This fraudulent, malicious conduct must stop immediately. Please advise if your law firm will be representing the Bank in a claim for compensatory damages.

Very truly yours,

Wayne Johnson

Cc: Karina Santana-Benchettab

LAW OFFICE OF
# DECICCIO & JOHNSON
541 S. ORLANDO AVENUE, SUITE 308
MAITLAND, FLORIDA 32751-5669
TELEPHONE (407) 740-4111
FACSIMILE (407) 740-4011

DANIEL DeCICCIO*·
WAYNE JOHNSON*

WEB SITE
www.deciccio.com

E-MAIL
wayne.johnson@deciccio.com
rhonda.rayser@deciccio.com

* BOARD CERTIFIED IN WORKERS' COMPENSATION
· LICENSED IN FL, MA & RI

May 17, 2019

**VIA FACSIMILE AND ELECTRONIC MAIL**
Ms. Pam Walton, esquire
Brady Law Group
5601 Mariner St., Ste. 300
Tampa, FL 33609-3416

RE:  **Karina Santana-Benchettab**
     Claim Number    : ▮▮▮▮▮▮▮
     DOB             : ▮▮▮▮▮▮▮
     Our File No.    : 18.00002

Dear Ms. Walton:

I accompanied Ms. Karina Santana-Benchettab to a meeting at the Social Security office on May 14, 2019. At the meeting, the Social Security official we met with, Ms. Smith, stated that Bank of America has reported that Ms. Santana-Benchettab has received the following income:

- $4,164 for the 3rd quarter of 2017
- $8,801 for the 4th quarter of 2017
- $5,781 for the 1st quarter of 2018
- $183 for the 2nd quarter of 2018
- $1,000 for the 4th quarter of 2018

Social Security has terminated Ms. Santana-Benchettab's disability benefits because Bank of America is reporting to IRS and Social Security that she is working and receiving income. The payments listed were either never received or were for items that are not income from working. (The $1,000.00 in the 4th quarter of 2018 was apparently for a 401K being cashed out.)

In addition to the federal agencies, Bank of America is also reporting this to MetLife. Because of that MetLife stopped Ms. Santana-Benchettab's long-term disability payments in July, 2018.

## Exhibit M

We are again requesting that this false information be corrected. Ms. Santana-Benchettab has lost her Social Security disability and her long-term disability payments because of it. She has applied for government assistance (food stamps), but this will be denied if Social Security is contacted with Bank of America showing she has income.

Very truly yours,

Wayne Johnson

Cc: Karina Santana-Benchettab



May 30, 2019

Karina Santana Benchettab
8830 Beacon Lakes Drive
Apt 208
Tampa, FL 33615

**RE: Karina Santana Benchettab**

To Whom it May Concern:

Please be advised that Karina Santana Benchettab was employed at Bank of America from 08/08/2016 to 01/22/2019. During the time of Karina's employment, she was a Client Svcs Rep II.

Karina has not received any other pay since 03/10/2018 rather than $1000.00 one-time bonus amount on pay check dated 12/05/2018.

She has received Short Term Disability and Long Term Disability from MetLife. Earnings were as follows:

| Description | Year | YTD Earnings |
|---|---|---|
| STD Leave Pay-70% | 2017 | 2,746.80 |
| STD Leave Pay-100% | 2017 | 5,232.00 |
| STD Leave Pay-70% | 2018 | 3,845.52 |

As per company policy, we can verify only the information contained in this letter. Please feel free to contact the Bank of America Global HR Services Center at 1-800-556-6044 with any questions or concerns.

Sincerely,

Bank of America Global HR Services

**Bank of America Global Human Resource Services Center**
PO Box 7110
Rantoul, IL 61866-7110
1-800-556-6044

**Exhibit N**



| Karina's Leave of Absence Requests are as follows: | | | |
|---|---|---|---|
| Leave of Absence | Last Day of Work | First Day of Leave | Actual Last Day of Leave |
| Non-Admin Leaves > US - LOA Closed | 9/8/2017 | 12/26/2018 | 1/22/2019 |
| Non-Admin Leaves > US - Long Term Disability - Unpaid | 3/9/2018 | 3/10/2018 | 12/25/2018 |
| Non-Admin Leaves > US - Short Term Disability 70% - Paid | 11/10/2017 | 11/11/2017 | 3/9/2018 |
| Non-Admin Leaves > US - Short Term Disability - Paid | 9/8/2017 | 9/16/2017 | 11/10/2017 |
| Non-Admin Leaves > US - STD Waiting Period - Paid | 9/8/2017 | 9/9/2017 | 9/15/2017 |